Jones Law Office
**RICHARD B. JONES**
898 W. Calle de los Higos
Tucson, Arizona 85745
(520) 777.6103
richard.b.jones@azbar.org
AzBar:009144
   Attorney for Defendant

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR02-999 TUC RCC (GEE) |
| Plaintiff, | ) | |
| | ) | MOTION TO TERMINATE |
| vs. | ) | SUPERVISED RELEASE |
| | ) | |
| 1) ROBERT HOLLER, JR., | ) | |
| Defendant | ) | |

It is expected that excludable delay under Title 18, United States Code, Section 3161(h)(1)(F) will occur as a result of this motion or an order based thereon.

Robert Holler, through counsel and pursuant to Federal Rule of Criminal Procedure 32.1(c) and 18 U.S.C § 3853(e)(1), requests that this court terminate his remaining term of supervised release "given the conduct of the defendant and in the interests of justice."

Mr. Holler was sentenced to 72 incarceration. He was released from prison and began his 60 month term of supervised release on January 5, 2007. He has been fully compliant during his entire period of supervision. According to USPO Kathleen Nunez, she would have sought early termination on her own *but for a recent event.*

Here is what happened. On November 3, 2009, Mr. Holler was arrested by immigration agents while he was visiting the U.S. Probation Office. The agents alleged that Robert was not a U.S. Citizen. This came as a surprise to everyone since Robert had initially been released on $10,000 in this case, based in part on his citizenship, and later

1  released from BOP (not deported) based on his citizenship.

2  Nevertheless, he was taken into immigration custody and had to wait four months
3
4  for a hearing. At the time of the hearing, on February 25, 2010, he was told they could

5  not find his file and the hearing would be continued for six months. He asked to be

6  bonded out. No. He then asked what other option he might have rather than sit in prison

7  in Eloy for another six months.
8
9  He was told he could voluntarily depart and try to establish his citizenship

10  through the U.S. Embassy in Mexico. So he is in Mexico trying to prove that right now.

11  That process, as it applies to Robert, is two-fold. First, he has a birth certificate

12  showing he was born in Nogales, Arizona. Second, even if that is somehow thought to be
13
14  insufficient, he is also a candidate for derivative citizenship through his parents. The

15  second option is a little more complicated in that it requires a variety of documents

16  including proof of his parents's continual residency for over 25 years. That process in

17  ongoing.
18
19  Here's the problem as it relates to this supervised release. Robert has been told

20  that the process will be quicker if he can show that there are no criminal warrants or holds

21  for him. At this point he can't do that - he is currently on supervised release for another

22  21 months.
23
24  Robert's dilemma is that he can't come back until his citizenship is recognized.

25  Yet his citizenship may not be recognized until after his supervised release is terminated.

26  If Robert is a U.S. citizen there is a staggering injustice in this situation. Early
27
28  termination of his supervised release will help remedy, to a slight degree, that injustice.

- 2 -

On the other hand, what if Robert is determined not to be a citizen? 1)   What advantage does Robert gain, if he is not a citizen, to rid himself of the yoke of supervised release?  The only  conceivable ill-motivated advantage to Robert is that if he illegally returns to this country in the next 21 months then the various penalties facing him would not include a violation of supervised release.

But if the decision to terminate is reduced to a mere consideration of disincentives not to return without permission, we need to also consider the disincentives that exist regardless of termination.  If Robert returns, without permission, he will be prosecuted as for illegally re-entering after deportation for a drug offense. His base offense level would be 24.  His criminal history would likely be level 3.  His guideline range would be 63-78 months.  And if it is later determined that Robert bamboozled this court regarding early termination, then an upward departure or variance on the new sentence may be appropriate. That's a pretty significant disincentive.

But for this immigration problem, Robert would have been the poster child for early termination.  If he is a citizen, early termination will help right a  significant injustice.  If he is not, the government loses little in terms of theoretical disincentives not to return.

DATED March 26, 2010

s/ *Richard B. Jones*
Richard B. Jones
Attorney for Defendant

---

1)   There seems no doubt that Robert has always believed himself to be a citizen.  He has been told so his entire life, has been provided documentation to that effect, and has lived openly  as a citizen in this country for as long as he can remember. There is a possibility, of course, that his parents may have created this myth for his own benefit.

*Certificate of Service*

I hereby certify that on March 26, 2010 I electronically transmitted this document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic filing to the following CM/ECF registrants:
- David Flannigan, Assistant United States Attorney

And emailed to:
- Kathleen.Nunez@azd.uscourts.gov